**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ROBERT J. DUNPHY,**

        **Plaintiff,**

**v.**                               **Case No.  8:14-cv-2005-T-30TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further proceedings.

I.

Plaintiff was forty-eight years of age at the time of his administrative hearing in November 2012. Plaintiff reported past work as a sales representative. Plaintiff applied for disability benefits and Supplemental Security Income payments in November 2010, alleging disability as of March 10, 2008, by reason of diabetes, degenerative disc disease, low back

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

pain, neuropathy, and depression.  Plaintiff's applications were denied originally and on reconsideration.

Plaintiff received a *de novo* hearing before an Administrative Law Judge ("ALJ") on November 7, 2012.  Plaintiff was represented at the hearing by counsel and testified in his own behalf.  No additional witnesses were called.

Plaintiff had prior work selling yellow page ads.  He couldn't keep up and he was let go.  He can no longer work because of back and radiating leg pain.  He has had the pain for years but it has gotten worse.  His back pain is in the buttocks and both legs hurt.  He has severe atrophy in his left leg and has trouble standing for more than 10 to 15 minutes before having to sit down.  He has a cane that he uses occasionally to steady himself.  He has fallen and cannot walk far.  He can't take big steps when walking and he moves slower.  He sits on the couch as much as he can.  He can sit for about 30 minutes.  He has discussed back surgery with a spine doctor but he is fearful of the risks of surgery.

He also is depressed over his condition and angry because he can't do things with his kids.  His anger makes him short with people.  He doubts he could deal with the people and the stress of his former sales job.  His medications affect him where he is sometimes wiped out.  Some make him have too much energy and some, too little.  He lives by himself and does not go out.  He does grocery shop but has trouble carrying a lot due to his back pain.  He doesn't deal with people when out, he just does his thing and then goes home.  He also has problems with focus and concentration.

He has trouble sleeping about three nights a week.  Either he cannot get to sleep or

he is awakened by the pain.  During the day, he stays home and watches television.  He liked

to work but he can't anymore.

The Veterans Administration ("VA") has determined Plaintiff has a 70% disability

rating.  According to Plaintiff, he was awarded "50 percent and 40 percent, but somehow that

adds up to 70 percent at the VA."  (R. 31-42).

Also before the ALJ were medical records outlining Plaintiff's medical history.

These matters are addressed herein as necessary.

By his decision of November 30, 2012, the ALJ determined that while Plaintiff has

severe impairments related to degenerative disc disease, diabetes, and neuropathy, he

nonetheless had the residual functional capacity to perform a full range of sedentary

exertional work.  Upon this finding and application of Grid Rule 201.28, the ALJ concluded

that Plaintiff could perform jobs available to him in the local and national economy.  Upon

this conclusion, Plaintiff was determined to be not disabled.  (R. 12-20).  The Appeals

Council denied Plaintiff's request for review, and the ALJ's decision became the final

decision of the Commissioner.

## II.

Entitlement to Social Security disability benefits and Supplemental Security Income

payments requires the claimant establish that he or she is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms

3

of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

4

were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002);

*McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

Plaintiff raises seven claims on this appeal.  As stated by Plaintiff, a remand and

reversal with an immediate award of benefits is warranted because:

> (1)   Plaintiff's degenerative disc disease meets Listing 1.04 when proper weight is given to the medical opinions;
>
> (2)   the ALJ erred by not obtaining VE testimony and relying exclusively on the grids for decision;
>
> (3)   the ALJ failed to recognize all Plaintiff's impairments, particularly that of depression and pain;
>
> (4)   the ALJ failed to give proper weight to the medical evidence, in particular, the evidence from Susan R. Cutchall, M.D., and John C. Drygas, M.D.;
>
> (5)   the ALJ failed to apply the proper standard under SSR 96-8p;
>
> (6)   the ALJ improperly substituted his own opinion for that of the medical evidence; and
>
> (7)   the ALJ erred in failing to properly apply the 11th Circuit pain standard.

(Doc. 10).  In his third and fourth claims, Plaintiff challenges the ALJ's consideration of the

psychological and medical evidence of record.  Plaintiff faults the ALJ for not according the

proper weight to the opinions of the treating, examining, and nonexamining doctors.  Because

the ALJ's consideration of this evidence impacts Plaintiff's other claims and because I

conclude that the ALJ applied incorrect standards when considering this evidence and/or

substantial evidence does not support his findings regarding the same, these are the only

claims addressed.

A.

By his third claim, Plaintiff argues that the ALJ failed to properly consider the severity of his mood disorder secondary to pain ("mood disorder").  In his view, had the ALJ properly considered the findings and opinions of his treating psychiatrist, the ALJ would have been compelled to find that his mood disorder had more than a minimal effect upon his ability to work.  In support, Plaintiff points to Dr. Hawk's reported GAF[2] scores of 53 and the residual functional capacity ("RFC") form Dr. Hawk completed.  Plaintiff also faults the ALJ for failing to state the weight accorded the GAF scores noted by Dr. Hawk and find that the RFC form demonstrated a severe mental impairment with occupational and social deficits. (Doc. 10 at 4-5).

The Commissioner counters that substantial evidence supports the ALJ's determination that Plaintiff's mental impairment was not severe.  The Commissioner notes that, as recognized by the ALJ, mental status examinations were largely normal and no functional limitations were documented, the nonexamining psychologists opined Plaintiff's mental impairment was not severe, and (3) Plaintiff's diagnosis of a mood disorder, standing alone, does not establish severity.  Regarding GAF scores, the Commissioner asserts that the ALJ was not required to address every piece of evidence, GAF scores do not necessarily bear

---

[2]Global Assessment of Functioning ("GAF") is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS  at 32 (4th ed. 1994) (DSM-IV).
Of note, the American Psychiatric Association eliminated the GAF scale in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders.  *See* DSM-5 at 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

on an individual's ability to work, and the SSA has declined to endorse GAF scores for use in its disability programs.  She also asserts that the GAF scores here represented "merely" moderate symptoms and thus Plaintiff fails to show his GAF scores established a severe impairment.  As for the mental health assessment from May 2011, the Commissioner contends the signature on it is illegible and the ALJ properly rejected the opinions therein as inconsistent with the record as a whole.  Lastly, the Commissioner argues that Dr. Riedmiller's opinion was not entitled to any special deference or consideration because he was not a treating physician and his opinion on Plaintiff's occupational functioning was vague.  (Doc. 12 at 5-10).

A review of the psychological evidence is helpful.  The bulk of the records are from the VA.  These include an initial psychiatric evaluation by Margaret J. Lakas, ARNP; treatment records from psychiatrist Stephen M. Hawk, D.O.; and a compensation and pension ("C & P") evaluation[3] by psychologist Douglas Riedmiller, Psy.D.  The only other psychological evidence is that submitted by the nonexamining, state agency psychologists.  A chronology follows.

On December 15, 2011, Plaintiff was evaluated for depression upon referral of Susan R. Cutchall, M.D., his primary doctor at the VA.  ARNP Lakas conducted the evaluation.[4] Aside from a depressed mood, mental status examination was essentially normal.  She

---

[3]A C & P examination is an examination requested by VA's Veterans Benefits Administration to be conducted at a VA health care facility for the purpose of evaluating a veteran's claim.  38 C.F.R. § 60.2.

[4]Her report indicates that she discussed Plaintiff's case with psychiatrist Balakrishna Rao, M.D., and he cosigned the report.  (R. 248, 250).

diagnosed a mood disorder, assessed a GAF of 55, prescribed an antidepressant, and scheduled Plaintiff an appointment with Dr. Hawk.[5]  (R. 248-50).

On December 28, 2010, Plaintiff began treating with Dr. Hawk for medication management and supportive psychotherapy.  Mental status examination was essentially normal, revealing generally intact memory and concentration, a depressed mood and "fair" insight and judgment.  The psychiatrist diagnosed a mood disorder NOS, rule out secondary to pain, and assessed a GAF of 53.  (R. 244).  Dr. Hawk continued to treat Plaintiff through at least September 2012.  Mental status examinations during that period were relatively normal.[6] (R. 407, 416, 548, 557, 599).  In approximately half of the visits, however, Dr. Hawk noted that Plaintiff had impaired insight and/or judgment.  (R. 496, 538, 585, 647).  Throughout that period, Dr. Hawk assessed GAF scores from 53-55, (R. 407, 416, 496, 539, 549, 557, 585, 599, 654), and prescribed Effexor (venlafaxine), an antidepressant medication (R. 242, 409, 421, 435, 495, 537, 547, 556, 587, 596, 656).

On February 9, 2011, Linnette Castillo, Psy.D., a nonexamining, state agency psychologist, completed a Psychiatric Review Technique ("PRT") form after reviewing the records (medical, psychological, and forms completed by Plaintiff) in Plaintiff's Social Security claims file.  Dr. Castillo reported a diagnosis of mood disorder due to a general

---

[5]Under the DSM-IV, a GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).

[6]A typical mental status examination read: "Speech is of nl. volume, rate, and tone. Mood is dysphoric with affect congruent, nl range and stable.  Thought process is logical, linear and goal-directed.  TC: Pt. denies any si/i/plan or hi/i/p.  Denies a/v/t hallucinations. No delusions are elicited.  Cognitively, pt. is alert and oriented in all spheres with Memory and Concentration grossly intact.  Insight fair, Judgment fair."  (R. 557).

medical condition and opined it was non-severe because "psychological factors do not interfere significantly with [his] overall functioning." (R. 352). In support, she noted that Plaintiff had no psychiatric hospitalizations, had no mental health treatment prior to the psychiatric consultation in December 2010, and although he was prescribed an antidepressant it was discontinued due to side effects. *Id.*

In March and May 2011, Dr. Hawk made two statements about Plaintiff's disability and functional capacity. First, on March 14, 2011, Dr. Hawk reported that Plaintiff was "suffering from mood disorder secondary to severe pain which is rendering him disabled at this time and he is encouraged to apply for disability in this regard." (R. 403-04). Second, on May 13, 2011, Dr. Hawk completed a form captioned "Mental Residual Functional Capacity Assessment." Therein, he checked boxes indicating that Plaintiff had marked limitations in eighteen of twenty mental activities. (R. 489-91). Although the signature is difficult to read (R. 491), Dr. Hawk noted later that month that he had completed a disability form for Plaintiff. (R. 560).

On June 7, 2011, Thomas L. Clark, Ph.D., another nonexamining, state agency psychologist, "affirmed" Dr. Castillo's conclusions in the PRT form. (R. 478).

In April or August 2011, the VA increased Plaintiff's service-connected disability percent to 70%, with his rated disabilities being a mood disorder at 50% and intervertebral disc syndrome at 40%. *See, e.g.* (R. 640, 643-44).

On October 13, 2011, Dr. Riedmiller conducted a C & P to evaluate Plaintiff's mood disorder and completed a "Disability Benefits Questionnaire."[7]  He assessed a GAF score of 57, and indicated the following best summarized Plaintiff's occupational and social impairment with regard to his mood disorder:

> Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily with normal routine behavior, self-care and conversation.

(R. 605-06).  When asked to check all symptoms that apply to Plaintiff's mood disorder, Dr. Riedmiller reported depressed mood, anxiety, chronic sleep impairment, flattened affect, impaired judgment, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships.  (R. 608).  The psychologist opined that it was clinically reasonable to conclude that Plaintiff's mood disorder resulted from his service-connected disability (back injury).  (R. 612).

In addressing the severity of Plaintiff's mood disorder at step two of the sequential evaluation process, the ALJ recognized generally that Plaintiff was treated at the VA for complaints related to depression and/or anxiety but did not refer to Dr. Hawk.  (R. 16).  He noted, however, that:

> [T]he record contains a mental health assessment signed by an unidentifiable source from the VA.  In this assessment, the author endorsed marked limitations in almost all basic mental health functioning criteria, which would amount to a finding of disability under the listings.

---

[7]It is unclear whether Dr. Riedmiller examined Plaintiff or only reviewed Plaintiff's VA claims file and VA electronic health records.

*Id.* He gave that "conclusory assessment little, if any, weight," because the evidence as a whole reflected "much greater functioning," and the assessment appeared to be "based primarily on [Plaintiff's] subjective reports rather than objective evidence." *Id.* The ALJ accorded "significant probative weight" to the opinions of the nonexamining, state agency psychologists and adopted their opinions that Plaintiff had "no more than mild limitations in activities of daily living; social functioning; and concentration, persistence, or pace." (R. 16). Additionally, the ALJ noted that:

> [Plaintiff] has generally al1eged limitations related to these areas due to his physical and not mental conditions. Further, he has had normal mental status examinations of record with no indication of decreased social or cognitive functioning. Additionally, [he] has experienced no episodes of decompensation that have been of extended duration.
>
> ***
>
> [Plaintiff] has had generally normal mental status examinations in which he was cooperative and pleasant with intact wit and humor, no thought disorders or delusions, and intact insight and judgment.
>
> ***
>
> While [Plaintiff] testified that he engages in only limited activities of daily living, he has previously reported essentially intact activities. In fact, he reported, "sports are the only thing he is unable to physically do because of his physical problems (Exhibit 2F)."

(R. 16). For those reasons and in reliance on the nonexamining psychologists' opinions, the ALJ concluded that Plaintiff's "medically determinable mental impairments" were nonsevere. *Id.*

On thorough consideration of the record and the parties' arguments, I conclude that it is not possible to ascertain whether substantial evidence supports the ALJ's finding that Plaintiff's mood disorder was nonsevere and whether it was properly considered throughout

the sequential evaluation because the ALJ failed to adequately consider the mental health evidence in several respects.

First, the ALJ failed to recognize Dr. Hawk as Plaintiff's treating psychiatrist and thus did not accord his opinions the benefit of the treating doctor rule. As a treating doctor, the ALJ should have given Dr. Hawk's opinions substantial or considerable weight absent a showing of good cause to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). While the ALJ addressed the mental RFC assessment completed by Dr. Hawk, he did not realize it was the opinion of Plaintiff's treating psychiatrist or consider it in light of other evidence which went unaddressed. Thus, even though I agree that the assessment was over the top and conclusory, I cannot find that the evidence as a whole reflected "much greater functioning" given the ALJ's seemingly perfunctory consideration of the evidence and failure to address the other evidence. Nor is there any indication that the assessment was based mainly on Plaintiff's subjective reports as noted by ALJ. As for it being illegible and/or from an "unidentifiable source," I do not agree. The assessment was completed mid-May 2011 and Dr. Hawk's treatment notes from that month reflect that he completed a disability form for Plaintiff. (R. 560). Regarding the GAF scores assessed by Dr. Hawk, I find it significant that the psychiatrist consistently assessed scores reflective of moderate symptoms even in the face of mental exams that generally were normal. Aside from the opinions of the nonexamining psychologists, I find no evidence that contradicts the same. While I recognize that the Commissioner and DSM-5 no longer endorse the use of GAF scores, given the consistency of the scores over several years in this case, they merited some consideration. Contrary to the

12

Commissioner's assertion, this result finds support in *McCloud v. Barnhart*, 166 Fed. App'x 410, 418 (11th Cir. 2006) (remanding where ALJ misconstrued and failed to state weight accorded GAF scores).  The ALJ also should have addressed Dr. Hawk's disability statement. While a disability opinion is an opinion on an issue reserved to the Commissioner and is not entitled to controlling weight or special significance, the ALJ was required nonetheless to evaluate it to determine the extent that it is supportable by the record.  *See* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996.).

Second, the ALJ appears to have overlooked or ignored significant portions of VA mental health records.  For example, the records reflect the VA's determination that Plaintiff's mood disorder was a 50% rated disability.  (R. 637-40, 642-44).  Although not binding, a VA rating is evidence that should be considered and is entitled to great weight. *Hacia v. Comm'r of Soc. Sec.*, 601 Fed. App'x 783, 785-86 (11th Cir. 2015) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984).  Here, the ALJ did not mention the VA's determination that Plaintiff's mood disorder was a 50% rated disability, let alone accord it great weight.  The ALJ's brief discussion of the psychological records from the VA does not substitute for consideration of the rating decision itself.  *See Williams v. Barnhart*, 180 Fed. App'x 902 (11th Cir. 2006); *but see Kemp v. Astrue*, 308 Fed. App'x 423, 426 (11th Cir. 2009).  In these circumstances, proper judicial review of the ALJ's handling of the VA rating for Plaintiff's mood disorder is not possible.  The ALJ's failure to evaluate the rating constitutes reversible error.  *See Salamina v. Colvin*, No. 8:12-cv-1985-T-23TBM, 2013 WL 2352204, at *4 (M.D. Fla. May 29, 2013).

The ALJ also appears to have ignored the opinions of Dr. Riedmiller.  Specifically, Dr. Riedmiller commented on the occupational import of Plaintiff's mood disorder and reported symptoms likely to impact one's functional capacity.  (R. 605-06, 608). The ALJ erred by not addressing this opinion.  *See Winschel*, 631 F.3d at 1179; *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  Although the ALJ was not required to discuss every piece of record evidence, he is not permitted to pick and choose which evidence supports his decision while disregarding evidence to the contrary.  *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

Finally, the ALJ's reliance on the reports of the nonexamining psychologists is problematic.  In light of the evidence discussed above, their opinion that Plaintiff's mood disorder was nonsevere conflicts with the opinions of treating and examining sources that the condition would affect his performance in the work setting.  And, the reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision.  *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)).  Additionally, a review Dr. Castillo's notes suggest that the only opinion evidence before her was the initial psychiatric consult conducted by ARNP Lakas.  *See* (R. 352).  That being the case, it is difficult, if not impossible, to conclude that her opinion supports the ALJ's finding that Plaintiff's mood disorder was not severe or did not result in any functional limitations.  The other nonexamining psychologist's opinion, even though rendered later, does not change the result.  Dr. Clark merely stated "I have reviewed all the evidence in file and the PRTF of

2/9/11 is affirmed as written." (R. 478). No explanation was provided and it is unclear

exactly what evidence he reviewed. Furthermore, his opinion predated that of Dr. Riedmiller.

For the above reasons, a remand for further consideration and weighing of the

psychiatric and/or psychological evidence is warranted.[8]

B.

By his fourth claim, Plaintiff contends the ALJ erred by failing to state the weight

accorded the opinions of Dr. Cutchall, his treating primary physician, and relying on the

opinions of nonexamining doctors in discounting her disability opinion. Similarly, he faults

the ALJ for discounting the opinion of Dr. Drygas, an examining neurosurgeon, urging that

the doctor's opinion is supported by MRI evidence as well as the opinions of Dr. Cutchall.

Because the ALJ did not properly refute these opinions, he urges the opinions should be taken

as true as a matter of law. Plaintiff also contends that the ALJ failed to address other medical

opinions from doctors and nurses at the VA facility at Bay Pines, recognize the proper

standard in considering evidence from the VA, properly evaluate the 40% disability rating

from the VA, and address the opinions from VA doctors that Plaintiff was totally and

permanently unemployable. He urges that, at a minimum, a reversal with remand is required.

(Doc. 10 at 5-8).

The Commissioner responds that the ALJ properly considered Dr. Cutchall's

opinions that Plaintiff was unable to work and gave them little weight because they were

inconsistent with her own treatment records and the evidence as a whole. As for Plaintiff's

---

[8]The concern here is not with an error at step two; rather, it is the failure to adequately consider the mental health evidence at that step which in turn necessarily impacts the ALJ's determinations at steps four and five of the sequential evaluation.

allegation that the ALJ did not consider Dr. Cutchall's "other" opinions, she contends that Plaintiff fails to identify any other opinions and thus the argument is waived.  As for the nonexamining doctor, the Commissioner asserts the ALJ was entitled "to rely in part" on the doctor's opinion and it provides substantial evidence for the ALJ's finding that Plaintiff could perform sedentary work.  Regarding Dr. Drygas's opinion that Plaintiff's back condition will lead to disability and he would benefit from surgery, the Commissioner asserts Dr. Drygas was not a treating source and thus his opinions were not entitled to special deference.  In any event, she asserts the ALJ properly rejected the neurosurgeon's opinion because it was vague, unsupported by objective findings, and inconsistent with his own P.A.'s findings on exam. Additionally, the ALJ noted Plaintiff's treatment was routine and conservative, and there is no evidence Plaintiff underwent the recommended surgery.  As for P.A. Dobson's opinions about Plaintiff's sensation, weakness, atrophy, and radiculopathy, the Commissioner contends the P.A. is not an acceptable medical source and thus the ALJ was not required to articulate reasons for discounting her opinions.  Finally, the Commissioner contends the ALJ properly considered the VA rating of 40% disability due to his back condition, the rating is not binding, and Plaintiff fails to show that the rating equates to limitations than those assessed by the ALJ.  (Doc. 12 at 16-22).

A review of the medical evidence related to Plaintiff's degenerative disc disease and neuropathy proves useful.  Once again, the bulk of the records are from the VA.  These include a C & P examination by Faris H. Zakria, M.D.; treatment notes and disability

statements from Dr. Cutchall;[9] a C & P examination by Walter A. Salmeron, M.D.; a C & P examination by Brianne I. Dobson, a certified physician's assistant ("PA"); and findings on MRI.  The record also contains an evaluation of Plaintiff's back and leg pain by neurosurgeon John C. Drygas, M.D., and a form completed by Edmund Molis, M.D. a nonexamining doctor.  A chronology follows.

On October 8, 2009, Dr. Reynolds saw Plaintiff on a walk-in basis at the VA for complaints of back and leg pain.[10]  No abnormalities were noted on examination.  Dr. Reynolds assessed low back pain with right leg neuralgia, a grossly abnormal MRI from December 2007, and diabetes.  (R. 326-27).

On October 16, 2009, Plaintiff began treating with Dr. Cutchall.  She noted positive right-sided weakness, positive back pain, and an atrophied left leg.  Dr. Cutchall assessed diabetes, chronic back pain, and neuropathy.  (R. 318-20).

On April 30, 2010, Dr. Cutchall examined Plaintiff following a fight with his brother and complaints of radiating pain in buttocks and leg.  Findings on exam generally were normal but bulging discs were noted.  (R. 303-05).

On June 22, 2010, Dr. Zakria conducted a C & P examination.  He noted Plaintiff had a history of decreased range of motion, stiffness, weakness, and low back pain.  He also noted that Plaintiff did not use any assistive devices and was able to walk a quarter mile.

---

[9]Eugene Reynolds, M.D., saw Plaintiff on at least one occasion when he was covering for Dr. Cutchall.

[10]According to Dr. Reynolds, Plaintiff was last seen at Bay Pines in December 2007. (R. 326).  Thereafter, it appears Plaintiff moved out of Florida and only recently had returned. Plaintiff had an appointment scheduled on October 16, 2009, with Dr. Cutchall, but needed to be seen sooner.

While Plaintiff was treated with pain medication, his response to treatment was poor. Findings on exam included spasm, pain with motion, decreased range of motion, muscle tone and power within normal limits, unrelated atrophy in the left leg, and normal sensation. He noted no significant effect on usual occupation apart from pain. (R. 298-301).

On October 19, 2010, Dr. Cutchall assessed peripheral neuropathy and chronic back pain/lumbar degenerative disc disease. (R. 267). She ordered an MRI and a neurosurgical consultation. (R. 268).

On October 29, 2010, Plaintiff underwent an MRI of the lumbar spine. Impressions included:

1.   Large L5-S1 extrusion with severe narrowing of the canal and right subarticular recess and compression of the right S1 and probably the right S2 nerve roots.

2.   L4-L5 protrusion with canal stenosis. It may touch the right L5 nerve root.

3.   L3-L4 protrusion with narrowing of the subarticular recesses and canal stenosis but no definite nerve root compression.

(R. 367).

On November 5, 2010, Dr. Cutchall wrote a letter to the SSA, opining that Plaintiff's disc herniation and spinal stenosis have "incapacitated him from working," and that he was "at present, unemployable." (R. 226). On December 15, 2010, Dr. Cutchall opined that she believes Plaintiff is "completely 100% unemployable." (R. 252).

On March 22, 2011, Dr. Drygas evaluated Plaintiff for back and leg pain upon referral from the VA. Muscle weakness and numbness/tingling in the feet were noted, and the results of MRI were discussed. Dr. Drygas assessed neuritis, lumbosacral; degeneration,

lumbar/lumbosacral disc; symptom, disturbance of skin sensation; lumbago; and

displacement, lumbar disc without myelopathy.  (R. 354-57).  He opined that:

> [Plaintiff] will benefit from discectomy, foraminotomy to
> decompress the nerve roots.  He should get some relief of
> pain, but the longstanding nature of this problem leads me to
> believe that he will have ongoing progressive problems with
> disability from these spine issues.  It is also possible that he
> will need further surgery in the future based on the severe
> degenerative changes in his spine.

(R. 357).

On April 6, 2011, Dr. Salmeron conducted a C & P examination.  He noted normal

posture and gait, thoracolumbar spasm, decreased sensory lower left leg, decreased muscle

tone on left thigh and calf, and positive muscle atrophy in the left thigh and calf.  (R. 390).

Occupationally, he reported Plaintiff would have problems with lifting/carrying and pain.  As

far as daily activities, he reported that Plaintiff's back pain limits his ability to do prolonged

standing/walking, lifting heaving objects, and participating in recreational, sports, and

exercise activities.  (R. 392).

On June 8, 2011, a nonexamining doctor, Edmund Molis, completed an RFC form

after reviewing Plaintiff's medical records to date.  He opined that Plaintiff could

occasionally lift ten pounds and frequently lift less than ten pounds; stand and/or walk for at

least two hours in an eight-hour workday; sit for about six hours in an eight-hour workday;

occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and never climb

ladders, ropes, or scaffolds.  He opined further that Plaintiff should avoid concentrated

exposure to vibration and hazards (machinery, heights, etc.).  (R. 479-86).

On October 13, 2011, PA Dobson conducted a C & P examination and completed a Disability Benefits Questionnaire.  She measured decreased range of motion with flexion, extension, lateral flexion, and lateral rotation.  (R. 615-16).  Testing to measure range of motion after repetitive use was not done due to pain and risk of falling.  (R. 524).  Deep tendon reflexes in Plaintiff's knees and ankles were absent.  (R. 526-27).  Straight leg raising testing was negative.  (R. 527).  Moderate radiculopathy on the right and severe radiculopathy on the left were noted.  (R. 528).  She reported functional loss in the following: weakened movement, excess fatigability, incoordination, pain on movement, atrophy of disuse, instability of station, disturbance of locomotion, and interference with sitting, standing and/or weigh-bearing.  (R. 524-25).  PA Dobson opined that Plaintiff "is unable to perform the duties associated with physical and sedentary employment."  (R. 532).

In April and October 2012, Plaintiff was seen by Dr. Cutchall.  Exams generally were normal.  (R. 579-81, 649-53).

On October 25, 2012, Dr. Cutchall wrote another letter on Plaintiff's behalf.  She opined that Plaintiff "suffers from intervertebral disc disease and is permanently and totally unemployable.  Improvement in his condition is not expected."  (R. 648).

The ALJ considered the medical evidence in the context of addressing Plaintiff's subjective complaints.  Thus, the ALJ stated:

> Treatment notes do indicate that objective medical imaging of the claimant's lumbar spine revealed a large L5-Sl extrusion with severe narrowing of the canal and right subarticular recess and compression of the right Sl and probably the right Sl nerve roots; L4-L5 protrusion with canal stenosis; and L3-L4 protrusion with narrowing of the subarticular recesses and canal stenosis.  However, the claimant had no definite nerve root compression.  On

> examination, the claimant has exhibited decreased muscle strength of the left lower extremity; yet, he has exhibited full motor strength elsewhere.  The claimant also exhibited normal sensation, full range of motion, and an intact gait, without the use of an assistive device (Exhibits 2F and 4F).
>
> Notably, the claimant has received a 40 percent disability rating from the VA for his spinal disorders.  However, the standards for disability under the Social Security Act and pertinent regulations and those used by the VA are different and do not correspond.  Moreover, while the claimant was unable to perform many exercises for testing to determine his eligibility for VA benefits, many of these reported inabilities were based on the claimant's subjective complaints.  Further, he previously reported "no significant effect on usual occupation, or activities of daily living except for pain."  Additionally, as noted above, the claimant has indicated, "sports are the only thing he is unable to physically do because of his physical problems."  Such admissions suggest far greater ability that the claimant has generally alleged (Exhibits 2F and 1lF).

(R. 18).

As for treating, examining, and nonexamining source opinions, the ALJ mentioned Dr. Cutchall's opinion that Plaintiff was incapacitated due to lumbar disc disease, but accorded it "little weight," finding it was "inconsistent with the evidence as a whole including the examination findings and [Plaintiff's] reported activities noted above."  He also noted that it was an opinion on matters reserved to the Commissioner.  Regarding Dr. Drygas, the ALJ recognized his opinion that Plaintiff "will likely have ongoing progressive problems with disability from his spinal issues and that it is possible that he will require surgery."  He accorded it "little weight," however, finding that it was "vague and unsupported by objective findings."  In particular, he stated that the doctor's examination notes reflected limited findings.  Lastly, the ALJ gave "greater weight" to the nonexamining doctor's opinion that

Plaintiff had the functional capacity to perform sedentary exertional work, finding that it was "consistent with the evidence as a whole." In support, the ALJ noted that "the limited findings of record support[ed] no greater limitations." (R. 18).

An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179. The failure to do so may constitute reversible error. *See MacGregor*, 786 F.2d at 1053. Further, "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). After a thorough review of the record and the decision, I conclude that the ALJ failed to properly evaluate the evidence from treating, examining, and nonexamining doctors.[11]

The ALJ's review of the VA medical evidence reflects a degree of "cherry-picking" and his conclusions suggest that he substituted his opinions for those of treating and examining doctors. First, while his rejection of Dr. Cutchall's disability opinion may be appropriate, his conclusion that is "inconsistent with the evidence as a whole" appears inaccurate when the whole record is considered. Contrary to the ALJ's urging, it is not at all clear that the objective evidence and exam findings are inconsistent with disability and he does not explain how they are. For instance, the MRI evidence and clinical findings revealed

---

[11]Certain rules apply to the consideration of the medical opinions of treating, examining, and nonexamining doctors. "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel*, 631 F.3d at 1179 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

significant objective findings including lumbar nerve root compression and left leg atrophy which clearly would support the pain complaints and claimed limitations with sitting, standing and walking.  Further, the only evidence that is clearly inconsistent with Dr. Cutchall's opinion is the nonexamining doctor's RFC opinion, and typically that is insufficient.  *See Lamb,* 847 F.2d at 703.  Thus, there is some suggestion that the ALJ inappropriately substituted his opinion for that of the Plaintiff's doctors without a record basis to do so.  *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986).

Second, the exam findings cited by the ALJ, i.e., full motor strength except for that in the left leg, normal sensation, full range of motion, and intact gait without use of a cane, are selective.  The record contains many findings that stand in direct contradiction to those but the ALJ does not discuss them.  The ALJ also fails to address some C & P examinations and state the weight accorded the medical opinions of the doctors and PA conducting them.  The most significant one is that of PA Dobson, as it stands in direct contradiction to the ALJ's findings and supports Dr. Cutchall's disability opinions.[12]

---

[12]Although PAs and ARNPs are not "acceptable medical sources," an ALJ may consider their opinions to show the severity of a claimant's impairment and how it affects his or her ability to work.  20 C.F.R. §§ 404.1513(d), 416.923(d).  When considering opinion evidence from these other sources, ALJs must use the same factors used to weigh the opinions from acceptable medical sources.  SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).  Also, ALJs generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a subsequent reviewer to follow the ALJs' reasoning when such opinions may have an effect on the outcome of the case.  *Id.* at *6.

Next, I find that the ALJ's consideration of the non-VA medical evidence is also lacking.  The ALJ's reasons for according "little weight" to the opinion of Dr. Drygas are unpersuasive.  The neurosurgeon's report and opinion are not vague and are supported by objective findings on MRI.  To the extent the ALJ discount's the opinion because Dr. Drygas's notes reflect limited findings, it again appears that the ALJ is acting as a doctor.

Additionally, it is worth noting that the ALJ's consideration of the nonexamining doctor's RFC opinion is also selective.  While affording his opinion greater weight than the treating and examining doctors, the ALJ failed to account for the postural and environmental limitations assessed by Dr. Molis.  The failure to do so is significant because those limitations might have changed the assessment of Plaintiff's RFC and precluded use of the grids for decision.

Finally, the ALJ's reasons for rejecting the VA's disability rating of 40% for Plaintiff's spinal disorders are inadequate.  First, even if the ALJ was correct in noting that Plaintiff's inability to perform certain testing exercises was based on his own subjective complaints, the VA practitioner reporting the same did not question Plaintiff's ability or effort upon testing.  Second, the ALJ incorrectly attributes to Plaintiff the statement that there is "no effect on usual occupation, or activities of daily living except for pain."  That statement, however, is from Dr. Zacharias.  (R. 301).  More importantly, the statement does not undercut medical opinions or Plaintiff's allegations because it means that pain *does* impact his occupation and daily activities.  Third, the ALJ's finding that Plaintiff admitted that "sports are the only thing he is unable to physically do because of his physical problems," is taken out of context.  That "admission" was noted during Plaintiff's initial psychiatric consult with

ARNP Lakas.  Her report reflects that Plaintiff told her that "[h]e used to fish, play sports and ride bikes.  Sports are the only thing he is unable to physically do because of his physical problems."  (R. 248).  Fourth, the ALJ is correct in noting that the SSA and VA have different standards.  Standing alone, however, it does not provide substantial support for rejecting a VA disability rating.  *See Hogard v. Sullivan*, 733 F. Supp. 1465, 1468 (M.D. Fla. 1990) (stating that the two agencies impose different standards, without more, is not sufficient justification for rejecting a VA rating).

In sum, I conclude that the ALJ did not fully and properly consider the opinions of the treating, examining, and nonexamining sources and thus a remand on this basis is warranted.  While the opinions on disability could be discounted, the objective and clinical findings by these doctors of a severe impairment in his low back is not shown by the ALJ to be contradicted by the evidence as a whole.  The condition in Plaintiff's lower spine clearly supports his pain complaints and the atrophy in his leg.  The ALJ should have explained just what evidence he was relying upon to discount the pain complaints and Plaintiff's limitations in sitting, standing, and walking.  Because the ALJ's reconsideration of the treating, examining, and nonexamining doctors may affect his findings throughout the sequential evaluation, Plaintiff's remaining issues need not be addressed.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

IV.

I make no finding on the matter of disability.  However, for the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not

supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
21st day of August 2015.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.


Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of Record